*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re GOHEEN, Minors.

UNPUBLISHED
April 11, 2024

No. 367438
Branch Circuit Court
Family Division
LC No. 21-006250-NA

Before: BOONSTRA, P.J., and FEENEY and YOUNG, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to her minor children, OG-1 and OG-2.[1] We affirm.

## I. FACTUAL BACKGROUND

In July 2021, petitioner, the Department of Health and Human Services (DHHS), filed a petition requesting the removal of OG-1 from respondents' care pursuant to MCL 712A.2(b)(1) and (2). DHHS alleged that respondents were homeless, using drugs, leaving OG-1 alone in their motel room, and having domestic-violence problems. The trial court ordered OG-1's removal and placement under the care and supervision of DHHS. After a preliminary hearing, the trial court authorized the petition and ordered respondents to submit to and pass random drug screens at the discretion of DHHS. The trial court dismissed the initial petition in August 2021 due to a dispute over OG-1s paternity; DHHS filed a second petition later that same month. The second petition contained the allegations of the first petition and further alleged that OG-1 had been exposed to methamphetamine during his first 12 weeks in utero and that OG-1 had tested positive for THC, the active ingredient in marijuana, when he was born. The petition alleged that respondents had tested positive for methamphetamine twice, had refused or not engaged with services offered by Children's Protective Services (CPS) and other providers, and had not cooperated with CPS investigators or followed the safety plan put in place by CPS. When OG-1 was removed from respondents' care, he was very sick and required immediate medical attention to treat a fungal

---

[1] The parental rights of respondent-father were also terminated in these proceedings, but he is not a party to this appeal.

rash, mild thrush, a middle ear infection, and pneumonia. The trial court authorized the petition and again ordered the placement of OG-1 with DHHS for care and supervision.

At the adjudication bench trial, respondent-mother admitted that she had twice tested positive for methamphetamine. Respondent-mother also admitted that, when OG-1 was removed, he was very sick and had to be prescribed four medications for his illnesses. Respondent-mother admitted further that the rash around OG-1's mouth was thrush caused by a dirty bottle. The trial court found that these admissions provided a sufficient factual basis to support the statutory criteria in the petition and took jurisdiction over OG-1. At the subsequent dispositional hearing, the trial court ordered that both parents pass random drug screens, attend substance-abuse treatment, and comply with the recommendations and services in their psychological evaluations. The court also ordered that respondents obtain and maintain employment and stable housing, and it maintained OG-1 in out-of-home placement with visitation at DHHS's discretion.

In April 2022, respondent-mother gave birth to OG-2. After OG-2's birth, DHHS filed a petition requesting her removal and placement under the care of DHHS. The petition alleged that it was contrary to the welfare of OG-2 to remain in respondents' home because respondents had failed to address the reasons for OG-1's removal and their visits with OG-1 continued to be supervised due to ongoing concerns about case progress and substance use. Further, petitioner alleged that OG-2 was under medical observation for withdrawal symptoms. A preliminary hearing was held and the trial court authorized the petition and placed OG-2 with DHHS for care and supervision. At the hearing, a foster-care worker for DHHS testified that respondents had found appropriate housing, but that they had been in compliance with services only since February 2022. Later that month, the petition was amended to include the following allegations: (1) OG-2's umbilical cord had tested positive for THC; (2) respondent-father had tested positive for methamphetamine and amphetamines on April 12, 2022; and (3) respondent-mother had tested positive for THC on April 11, 2022. At the adjudication bench trial on the amended petition, respondents both admitted that, in July 2021, OG-1 was removed from their care because of controlled substance abuse, and at the time of the petition regarding OG-2, respondents were living together and there were substance-abuse issues in the home. The trial court found that these admissions were sufficient to provide a factual basis for the petition, and it took jurisdiction over OG-2.

At a dispositional review hearing in August 2022, petitioner noted that respondent-mother had tested positive for amphetamines in June 2022 and that she had not attended outpatient substance-abuse treatment since April 2022. Neither respondent appeared for dispositional review hearings held in November 2022 and February 2023. Respondent-mother's caseworker indicated that although respondent-mother had completed some sessions with a visitation coach, she had not attended any substance-abuse treatment. Petitioner informed the trial court that it intended to file a petition to terminate respondents' parental rights to both children once the statutory time period had elapsed for OG-2.

In April 2023, DHHS filed a petition requesting termination of respondents' parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). At a review hearing that same day, respondent-mother's caseworker informed the court that respondent-mother had tested positive for methamphetamine in March and April 2023. Further, respondent-mother had participated in fewer

than half of her scheduled parenting-time visits. The trial court ordered that the permanency planning goal be changed from reunification to a concurrent goal of reunification or adoption.

A termination hearing began in May 2023, was adjourned twice, and ultimately concluded in July 2023. At the termination hearings, the foster-care worker testified that, throughout the case, respondent-mother had participated in 56 drug screens, six of which were positive for methamphetamine or amphetamines, with the most recent positive test occurring on April 3, 2023. The foster-care worker testified further that, after initial substance-abuse services were ordered in November 2021, respondent-mother had participated in such services from December 2021 to April 2022 and had recently enrolled again in April 2023. Respondent-mother's outpatient therapist agreed that respondent-mother had been consistent with her substance-abuse and individual treatment since April 2023 and that respondent-mother was very engaged with her services. Respondent-mother's therapist testified further that she believed that respondent-mother would need a few more months of substance-abuse treatment and even more individual counseling before she could complete services.

The foster-care worker testified that OG-1 had been in care for two years and OG-2 had been in care for a year. According to the foster-care worker, there had been 166 scheduled parenting-time visits and approximately 50 of them had been canceled by respondents. The foster-care worker also had concerns regarding the condition of respondents' home during several home visits throughout the case, opining that the house "was a disaster" on those occasions. The foster-care worker testified that both children needed consistency and parents who are sober and clean. She testified further that she was concerned about the consistency of respondents' engagement with services, employment and housing, noting that respondents had faced eviction, unemployment, and utility shutoff notices several times during the pending proceedings, although she noted that respondent-father's mother had provided assistance. The foster-care worker agreed that the longest period during the case that respondent-mother was not working was four months. Respondent-mother testified that her utilities were never shut off and she had never been evicted.

A foster-care visitation coach testified that she worked with respondents during a 16-week program from June to November 2022. The visitation coach testified that respondent-mother was very engaged with the program and that respondent-mother had completed visitation services. According to the visitation coach, other than two missed visits during that time period, respondent-mother's parenting-time sessions during those four months went very well. The visitation coach testified further that OG-1 and respondent-mother had a very strong bond and, while there was affection with OG-2, respondent-mother had reported being more bonded with OG-1. Respondent-mother also testified that she and OG-2 were growing more bonded but that her strongest bond was with OG-1.

The trial court found that petitioner had provided clear and convincing evidence warranting termination under MCL 712A.19b(3)(c)(*i*) and (g). The trial court acknowledged that respondent-mother had made progress in addressing her substance abuse, but found that, based on the evidence, it was clearly convinced that her substance abuse continued to exist, noting that respondent-mother had used methamphetamine while pregnant and had tested positive for methamphetamine shortly before the termination proceedings began. Based on the children's young ages and their presence in foster care for nearly their entire lives, the trial court determined that the conditions that led to adjudication continued to exist and could not be rectified within a

reasonable time. The trial court also found that, although respondent-mother was financially able to provide for her children, she could not provide proper care and custody considering her substance-abuse problems and their young ages. Finally, the trial court found that termination was in the children's best interests because they had been in custody for so long and required consistency, stability, and permanency.

The trial court entered an order terminating respondent-mother's parental rights as described. This appeal followed.

## II. STANDARD OF REVIEW

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re Sanborn*, 337 Mich App 252, 272; 976 NW2d 44 (2021) (quotation marks and citation omitted). "If a trial court finds that a statutory basis for terminating parental rights exists by clear and convincing evidence, it is required to terminate parental rights if it finds from a preponderance of evidence on the whole record that termination is in the children's best interests." *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 637; 853 NW2d 459 (2014) (quotation marks and citation omitted). See also MCL 712A.19b(5). This Court reviews "the trial court's determination of statutory grounds for clear error." *Sanborn*, 337 Mich App at 272. See MCR 3.977(K). This Court also reviews for clear error the trial court's best-interest determination. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Sanborn*, 337 Mich App at 272-273 (quotation marks and citation omitted).

## III. STATUTORY GROUNDS FOR TERMINATION

Respondent-mother argues that the trial court erred by finding that statutory grounds for termination had been proven by clear and convincing evidence. We disagree.

MCL 712A.19b(3) provides in relevant part:

The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

\* \* \*

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

-4-

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

"Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011); see also *In re HRC*, 286 Mich App 444, 452-453; 781 NW2d 105 (2009).

Termination under subdivision (c)(*i*) is appropriate when "the totality of the evidence" supports a finding that the parent "had not accomplished any meaningful change in the conditions" that led to adjudication. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). The trial court must also find that "there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*i*). A respondent's repeated positive drug screens and lack of engagement with substance-use counseling services may demonstrate that termination of parental rights is warranted under MCL 712A.19b(3)(c)(*i*). See *In re Atchley*, 341 Mich App 332, 345; 990 NW2d 685 (2022).

In this case, there is no dispute that the 182-day statutory period was met for both children. The conditions that led to OG-1's adjudication were respondent-mother's substance-abuse problems and OG-1's health at the time of removal. The conditions that led to OG-2's adjudication were OG-1's original removal and the continued substance-abuse problems in the home. At the time of the termination hearings, respondent-mother was attending individual counseling and outpatient substance-abuse treatment, was engaged in treatment, and was in compliance with most services. However, respondent-mother also tested positive for methamphetamine approximately three months before the final termination hearing and several other times during the case. She had demonstrated a pattern of engagement and disengagement with substance-abuse treatment and failed to attend services for almost a year during the pendency of the case. She attended only 70% of her parenting time visits, which directly impacted her bonding with OG-2. Moreover, at the time of termination, OG-1 and OG-2 had been wards of the state for two years and one year, respectively, and respondent-mother still had work to do to meaningfully change the conditions that led to adjudication.

Although respondent-mother showed some progress addressing her substance abuse, the trial court did not clearly err when it found that the conditions that led to adjudication were still present and that those conditions could not be rectified in a reasonable time considering the children's ages. See *Williams*, 286 Mich App at 272 (holding that, although the respondent "embarked on a commendable effort to treat her addiction several months before the termination hearing, the totality of the evidence amply support[ed] that she had not accomplished any meaningful change in the conditions existing by the time of the adjudication" when she required more treatment before reunification could occur, and had failed to complete substance-abuse programs and used substances repetitively throughout the case). Considering the significant evidence that respondent-mother's substance abuse remained an issue that had not been rectified, we are not "left with a definite and firm conviction that a mistake has been committed." *Sanborn*, 337 Mich App at 272-273.

Further, the record supports the trial court's finding that termination was warranted under MCL 712A.19b(3)(g). "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). The doctrine of anticipatory neglect provides that "[h]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re LaFrance Minors*, 306 Mich App 713, 730; 858 NW2d 143 (2014) (quotation marks and citation omitted; alteration in *LaFrance*). "However, drug use alone, in the absence of any connection to abuse or neglect, cannot justify termination solely through operation of the doctrine of anticipatory neglect." *Id*. at 731.

At OG-1's adjudication, respondent-mother admitted that when OG-1 was originally removed from her care, he was very sick and had to be taken to the hospital within 12 hours of removal and prescribed four medications to address his illnesses, which included thrush, a fungal rash, a middle ear infection, and pneumonia. The foster-care worker testified that at OG-1's disposition, petitioner's main concerns were substance abuse and physical neglect. As stated, although respondent-mother was participating in substance-abuse treatment at the time of the termination hearing and had completed her visitation coaching services, the evidence established that respondent-mother failed to comply with her court-ordered substance-abuse treatment for almost a year and had only recently resumed that treatment. The evidence also established that respondent-mother tested positive for methamphetamine in April 2023, and that she had missed 50 scheduled parenting-time visits. Further, at the time of termination, OG-1 was three years old and OG-2 was one year old and both were vulnerable due to their young ages. In light of this evidence, the trial court did not clearly err when it determined that respondent-mother's continued struggle with methamphetamine, her inconsistency in complying with services and visitation, her recent methamphetamine use, and her history of past neglect prevented her from providing proper care and custody within a reasonable time considering the ages of the children.

Respondent-mother argues that petitioner meant to punish respondent-mother for her relationship with respondent-father and that most of the testimony that supported termination revolved around respondent-father's actions. Respondent-mother is correct that there was testimony at the termination hearings regarding her relationship with respondent-father and its potential to cause her to relapse. However, respondent-mother's argument does not address any basis the trial court relied on to determine that the statutory grounds for termination were met. The court found that respondent-mother's continued substance-abuse problem supported termination under MCL 712A.19b(3)(c)(*i*) and (g), and it did not address respondent-mother's relationship with respondent-father. The trial court did not clearly err by holding that petitioner had proven that statutory grounds for termination under MCL 712A.19b(3)(g) existed.

## IV. BEST-INTEREST DETERMINATION

Respondent-mother argues further that there was insufficient evidence to support the trial court's finding that termination of her parental rights was in her children's best interests. We disagree.

In order to determine whether termination is in a child's best interests,

[t]he trial court should weigh all the evidence available to determine the children's best interests. To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

Other factors that may be considered include the length of time the child has been in foster care and the likelihood the child could be returned to the parent's home in the foreseeable future. *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018).

In this case, the trial court found that termination was in OG-1's and OG-2's best interests because the children had been in foster care for some time, and they needed consistency, stability, and permanency. The evidence was sufficient to support the trial court's holding.

Respondent-mother argues that the trial court should not have expected her to fully recover from her substance-abuse problems within the short time period of the proceedings below. However, by the time of the termination hearing, the case had been ongoing for two years, and during that time, respondent-mother had been offered many services to address her substance-abuse problem but had failed to sufficiently engage with and benefit from those services. Although respondent-mother had recently resumed substance-abuse treatment, the trial court noted a pattern of short-term compliance with treatment followed by long periods of noncompliance. Based on the record in this case, we cannot say the trial court clearly erred in determining that respondent-mother's substance abuse issues presented a risk to the children's health and stability.

Respondent-mother also argues that the trial court erred because it did not consider the effect the children's young ages had on her ability to bond with them. But the trial court did not base its holding on the lack of a bond between respondent-mother and her children; rather, it held that the children's need for permanence and stability favored termination of her parental rights. Further, respondent-mother was given the opportunity for visitation, but canceled nearly a third of those visits over the course of the proceedings below. Respondent-mother's argument concerning her bond with the children lacks merit.

Respondent-mother also argues that the trial court decided that consistency, stability, and permanency were more important than reunification despite the fact that there was no testimony that the children would be better off in foster care. However, although evidence was presented that respondent-mother had done well with the children during visitation, that she was bonded with OG-1, and that she was developing a stronger bond with OG-2, respondent-mother had not been consistent with visiting time and had multiple periods of unemployment, and there were ongoing concerns the condition of her home. The foster-care worker testified further that, in her opinion, instability was a "big concern" with such young children, and that the children needed consistency. Considering the length of time the children had already spent in foster care and respondent-mother's failure to consistently comply with her case service plan, the trial court did not clearly

err by determining that termination was in the children's best interests. *White*, 303 Mich App at 713-714.

Affirmed.

/s/ Mark T. Boonstra
/s/ Kathleen A. Feeney
/s/ Adrienne N. Young